UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Asif Ahmed Salim,                                Case No. 3:18-cr-186

           Petitioner–Defendant,

v.                                               MEMORANDUM OPINION
                                                                      AND ORDER

United States of America,

           Respondent–Plaintiff.

## I.     INTRODUCTION

Petitioner Asif Ahmed Salim filed a motion for relief under 28 U.S.C. § 2255, asserting his sentence should be vacated because his attorney did not file an appeal on his behalf. (Doc. No. 63). The government opposed Salim's motion, (Doc. No. 68), and Salim filed a brief in reply. (Doc. No. 71). For the reasons stated below, I deny Salim's motion.

## II.     BACKGROUND

In 2015, Salim and three co-defendants were indicted after an investigation revealed they raised and provided funds to Anwar al-Awlaki, a terrorist leader in Yemen. (Case No. 3:15-cr-358, Doc. No. 1). Salim was charged with Conspiracy to Provide and Conceal Material Support to Terrorists, in violation of 18 U.S.C. § 2339A; Providing Material Support to Terrorists, in violation of 18 U.S.C. § 2339A; and Conspiracy to Obstruct Justice, in violation of 18 U.S.C. § 1512(k). (*Id.*). Salim and the government reached a plea agreement in which the government would dismiss the charges against Salim and he would plead guilty to a new charge.

On April 12, 2018, Salim was charged through an information with one count of concealing the financing of terrorism, in violation of 18 U.S.C. § 2339C. (Doc. No. 1). Salim waived his right to prosecution by indictment, (Doc. No. 3), and pled guilty to that charge. (Doc. No. 36). In the plea agreement, Salim and the government agreed to a sentence cap of 8 years in prison. They also agreed that if I notified the parties I intended to impose a sentence greater than 8 years, Salim would be given an opportunity to withdraw his guilty plea. (*Id.* at 4). On November 9, 2018, I sentenced Salim to a term of 72 months, or 6 years, in prison and a lifetime term of supervised release. (Doc. No. 37). He did not file a notice of appeal.

Salim filed his § 2255 motion on July 5, 2019. (Doc. No. 63). Salim asserts two grounds for relief. In Ground One, Salim contends he received ineffective assistance of counsel when his trial attorney, Linda Moreno, did not file an appeal on his behalf as he requested. (*Id.* at 4). According to Salim, he told Moreno "he wanted to appeal the sentence and term of supervised release," but Moreno did not do so. (*Id.*). In Ground Two, Salim asserts he received ineffective assistance of counsel when Moreno failed to file an appeal to challenge the disparity in the sentence he received compared to the sentence his co-defendant and brother, Sultane Salim, received. (*Id.* at 5-6).

On December 21, 2021, I held an evidentiary hearing via video conference, during which testimony was presented from Salim, Farah Nizamuddin (Salim's wife), and Moreno. Salim testified that, immediately after the sentencing hearing, he and Moreno were in the courthouse elevator as the United States Marshals were preparing to transport Salim back to jail. Salim stated that the first thing he said to Moreno was that they needed to file an appeal because I imposed a lifetime term of supervised release. He testified that Moreno told them they would not be filing an appeal and "kind of laughed" at the idea of doing so. (Transcript of Dec. 21, 2021 hearing, at 17). According to Salim, he did not know what to do once Moreno told him she would not file the appeal until he was moved into the custody of the Bureau of Prisons in January 2019. At that point, Salim "spoke with

some people who were more familiar with the laws," and who told him to contact different attorneys to explore his options. (*Id.* at 19-20). Shortly thereafter, Salim asked Farah to contact Moreno to request a copy of the docket in this case and a transcript of the sentencing hearing. As Salim concedes, this email contact with Moreno came six days after Sultane was sentenced to a lesser sentence than Salim received. (*Id.* at 28).

Farah testified that she spoke with Moreno by telephone on the afternoon of the sentencing hearing. According to Farah, Moreno reported that the first thing Salim had said to her was that he wanted to appeal but Moreno laughingly dismissed it. (*Id.* at 38-39). Farah did not communicate with Moreno again until she emailed her to request a copy of the sentencing transcript. Farah stated she had to send at least two more emails over the course of a few weeks before she received a response from Moreno. (*Id.* at 39). When Moreno responded, she told Farah that Sultane's attorney would obtain the transcript and provide it to Farah and Salim. (*Id.* at 39-40).

Farah conceded that during "the course of [Moreno's representation of Salim], there [were] times that it was hard to reach her or to get responses to emails. There was a lot of follow up on, you know, 'We haven't heard anything back. Do you know anything more?' There's several of those kind of emails to her." (*Id.* at 42). Moreover, she acknowledged she did not attempt to contact Moreno about an appeal after the post-sentencing-hearing phone call, despite Salim's alleged urgent desire to file such an appeal. (*Id.* at 43-44). She also acknowledged Sultane's lesser sentence was part of Salim's motivation for filing an appeal. (*Id.* at 44-45).

Moreno also testified during the hearing. She stated Salim, Farah, and Asif's sister-in-law (an attorney in Georgia) had her personal cell phone number and email address and that she communicated "often" with each of them. (*Id.* at 57-58). She testified she would have been "surprised" if any of the three had any hesitation about reaching out to her to discuss the case. (*Id.* at 58). Moreno recalled telling Salim she would call Farah after the sentencing hearing to update her

3

on the outcome of the hearing. (*Id.* at 62). But she testified she did not have any recollection of being in an elevator with Salim, including after the sentencing hearing, of Salim telling her after the hearing that he wanted to appeal, or of informing Farah that Salim had expressed a desire to appeal. (*Id.* at 63). She also emphatically denied laughing at any request Salim made following the hearing or when relaying the events of the hearing to Farah, asserting it "is not a possibility that I would have blown him off with respect to something so serious." (*Id.* at 63-64, 77).

Additionally, Moreno testified that while she exchanged emails and phone calls with Salim, Farah, and his sister-in-law throughout the course of this case, she did not get any phone calls or emails from any of the three between the sentencing hearing and the mid-January email from Farah seeking the sentencing transcript and a copy of the docket. (*Id.* at 65-66).

### III. ANALYSIS

Section 2255 permits a defendant to challenge the sentence he received through a claim that the defendant's sentence was "imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). Defendants challenging their sentence under § 2255 must identify a constitutional error, "a fundamental defect which inherently results in a complete miscarriage of justice, . . . an omission inconsistent with the rudimentary demands of fair procedure[, or] exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Hill v. United States*, 368 U.S. 424, 428 (1962) (citations and internal quotation marks omitted).

Salim claims Moreno failed to follow his explicit request to file a notice of appeal of his sentence and that this failure violated his Sixth Amendment right to counsel. (*See, e.g.,* Doc. No. 63-1 at 5). In order to establish a claim of ineffective assistance of counsel, Salim must show "(1) that counsel's representation fell below an objective standard of reasonableness, . . . and (2) that counsel's deficient performance prejudiced the defendant." *Roe v. Flores-Ortega*, 528 U.S. 470, 476-77

4

(2000) (citing *Strickland v. Washington,* 466 U.S. 668, 688, 694 (1984)) (internal quotation marks omitted). The Supreme Court has held "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Flores-Ortega*, 528 U.S. at 480.

The Sixth Circuit has recognized "that even when a defendant waives all or most of his right to appeal, an attorney who fails to file an appeal that a criminal defendant explicitly requests has, as a matter of law, provided ineffective assistance of counsel that entitles the defendant to relief in the form of a delayed appeal." *Campbell v. United States*, 686 F.3d 353, 360 (6th Cir. 2012). *See also Pola v. United States*, 778 F.3d 525, 533 (6th Cir. 2015) ("The Supreme Court has held that an attorney performs deficiently if, after consulting with his client, he 'disregards specific instructions' from his client 'to file a notice of appeal . . . .'") (quoting *Flores-Ortega,* 528 U.S. at 477).

After hearing the testimony offered during the evidentiary hearing and observing the witnesses as they testified, I conclude Salim has not established he reasonably demonstrated to counsel that he was interested in appealing.

Salim's testimony on this point was not consistent. He testified that, immediately after the sentencing hearing, he told Farah that Moreno "was essentially completely uninterested" in pursuing the appeal and that they would need to "explore other options." (Transcript at 17). But he also stated he did not become aware Moreno did not file a notice of appeal until "[w]eeks, maybe months later. I realized there was nothing there once I finally got the docket sheet." (*Id.* at 31). As both Salim and Farah testified, they did not request the docket sheet from Moreno until January 2019, over two months after he was sentenced, and less than one week after Sultane was sentenced. Moreover, the testimony offered during the hearing establishes that Salim, Farah, and Salim's sister-

5

in-law frequently contacted Moreno to discuss the status of the case prior to his sentencing hearing, but they did not attempt to contact her for several months after the sentencing hearing, despite Salim's alleged urgent desire to appeal.  (*Id.* at 38-39, 42-44, and 57-58).

By contrast, Moreno testified it "is not a possibility that I would have blown him off with respect to something so serious," and that if Salim had requested that she file an appeal, she "would have discussed the grounds for appeal.  We would have revisited how it fit into the appellate waiver.  And if I couldn't do the appeal myself, I could have prepared a pro se template notice of appeal.  But I have no memory of any of those things happening."  (*Id.* at 78).

As Salim concedes, (*id.* at 23-24), Moreno filed three motions for pretrial release on his behalf.  (*See id.* at 60).  Moreno also negotiated a sentence limitation of eight years in the plea agreement, two years below the ten-year guideline term of imprisonment.  (*See* Doc. No. 18 at 14; Doc. No. 36 at 2, 4).  Moreno's conduct throughout her representation of Salim lends credence to her assertion that there was no post-sentencing conversation in the elevator as Salim contends.  Moreover, Moreno's testimony regarding the alleged post-sentencing exchange is consistent with her conduct during her representation in this case.  Meanwhile the failure of Salim, Farah, and Salim's sister-in-law to contact Moreno after the sentencing hearing is not consistent with their conduct in this case prior to sentencing.

I conclude Moreno's testimony regarding this matter was credible, and that the testimony offered by Salim and Farah on this matter was not credible.

Further, while Salim appears to represent that he is not pursing a claim that his right to counsel was violated under the first *Flores-Ortega* prong (that a rational defendant would have wanted to appeal), I also conclude, in an abundance of caution, that Salim cannot prevail on this argument either.  (*See* Doc. No. 71 at 4 ("[T]he issue is not whether or not counsel needed to consult further" regarding an appeal.))

6

The Supreme Court has stated:

> We cannot say, as a *constitutional* matter, that in every case counsel's failure to consult with the defendant about an appeal is necessarily unreasonable, and therefore deficient. Such a holding would be inconsistent with both our decision in *Strickland* and common sense. See [*Strickland*, 466 U.S.] at 689, 104 S.Ct. 2052 (rejecting mechanistic rules governing what counsel must do). For example, suppose that a defendant consults with counsel; counsel advises the defendant that a guilty plea probably will lead to a 2 year sentence; the defendant expresses satisfaction and pleads guilty; the court sentences the defendant to 2 years' imprisonment as expected and informs the defendant of his appeal rights; the defendant does not express any interest in appealing, and counsel concludes that there are no nonfrivolous grounds for appeal. Under these circumstances, it would be difficult to say that counsel is "professionally unreasonable," *id.*, at 691, 104 S.Ct. 2052, as a constitutional matter, in not consulting with such a defendant regarding an appeal. Or, for example, suppose a sentencing court's instructions to a defendant about his appeal rights in a particular case are so clear and informative as to substitute for counsel's duty to consult. In some cases, counsel might then reasonably decide that he need not repeat that information. We therefore reject a bright-line rule that counsel must always consult with the defendant regarding an appeal.

*Flores-Ortega*, 528 U.S. at 479-80.

The facts of this case fit squarely within the hypotheticals offered by the Supreme Court. As I discussed above, Moreno negotiated an eight-year maximum sentence in the plea agreement. I then imposed a lower sentence than the agreed-upon cap, sentencing Salim to six years in prison. (Doc. No. 37). I also thoroughly reviewed the scope of the appellate waiver in the plea agreement. (Doc. No. 39 at 6-9, 82). Salim confirmed he understood there were a very limited number of potential issues on which he could appeal, and he also stated he did not need any further time to discuss the appellate waiver with Moreno.[1] (*Id.*). Moreover, after I imposed the sentence of 72 months in custody and a lifetime term of supervised release, I asked both sides if they had any

---

[1] I also informed Salim that he had 14 days after the sentencing judgment entry was filed in which to file a notice of appeal to challenge his plea, sentence, or both. (Doc. No. 39 at 82). Further, I told Salim he should talk with his lawyer "and understand that that 14 day requirement applies and that if you don't . . . comply within that 14 days period, you may forever waive and give up certain appellate issues that you might have in this particular case." (*Id.*).

objection to the sentence I imposed which had not previously been raised.  (*Id.* at 75-76, 81-82).  Salim, through Moreno, stated he did not have any further objections.  (*Id.* at 82).

I conclude Salim has not established he in fact informed Moreno he wanted to file an appeal or that the circumstances would suggest that a rational defendant would want to file an appeal and, therefore Salim fails to show he received ineffective assistance of counsel.

### IV.  CONCLUSION

For the reasons set forth above, I deny Salim's § 2255 motion.  (Doc. No. 63).

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge